Opinion issued May 27, 2010

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00063-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



MATTHEW A. MATTHEWS, Appellant

 

V.

 

ELIZABETH MCCALL NORTHRUP, Appellee

 

 



On Appeal from the 245th District Court

Harris County, Texas

Trial Court Cause No. 2007-74804

 

 



MEMORANDUM OPINION ON REHEARHING

Appellant, Michael A. Matthews, has filed
a motion for rehearing.  We requested a
response from appellee, Elizabeth McCall Northrup, but received none.  Tex.
R. App. P. 49.2.  We now grant Matthews’s
motion for rehearing.  Tex. R. App. P. 49.3.  We vacate our January 14, 2010 judgment,
withdraw our January 14, 2010 opinion, and substitute this opinion in its
place.

Matthews challenges the trial court’s
October 1, 2008 “Final Order in Suit Affecting the Parent-Child Relationship,”
in which the trial court ordered child support in favor of Northrup.  In one issue, Matthews contends that the
“trial court erred in including as income for the purposes of child support
funds of the KLM Family Limited Partnership Revocable Management Trust.”

          We
modify the judgment of the trial court and affirm as modified.

Factual and Procedural Background

Matthews, in his Original Petition in
Suit Affecting the Parent-Child Relationship, sought joint managing
conservatorship of his minor child and a determination of his child support
obligation.  The parties stipulated to
all facts but disagreed as to whether or not the trial court, in determining
the amount of child support, could consider “phantom” income, i.e., income from
the KLM Family Partnership, Ltd. (the “Partnership”) allocated to Matthews as a
limited partner for federal income tax purposes, but not actually received by
him.  Matthews’s mother, Leann Matthews (“Mother”),
created the Partnership as a way to preserve family assets.  The Partnership, whose initial contributions
were gifted by Mother, named two limited partners: (1) Matthews, with a 48.33
percent interest, and (2) his sister Kaci Ann Matthews, with a 49.67 percent
interest.  Both Matthews and his sister were
minors when the Partnership was created. 
Mother held Matthews’s interest in the Partnership as custodian per the
Texas Uniform Transfers to Minors Act (“UTMA”)[1]
until he turned twenty-one years of age.

Mother also created the KLM Family
Partnership, Ltd. Revocable Management Trust (the “Trust”), naming herself as
Trustee and lifetime beneficiary and the limited partners in the Partnership as
beneficiaries at her death.  She funded the
Trust with ten dollars and the general partner interest in the Partnership, i.e.,
the remaining two percent interest.  She
named the Trust as the general partner for the Partnership.  Mother controlled both the Trust and the
Partnership in her capacity as Trustee, and any distributions were within her
“express and total power” and her “sole discretion.”  The Trust provided that “[i]f any [T]rust
property becomes distributable to a beneficiary when the beneficiary is under
21 years of age,” the “Trustee shall distribute the [T]rust property to a
beneficiary when he or she attains 21 years of age.”  Matthews’s 2005 and 2006 federal tax returns
reflect that he was allocated and paid taxes on income from the Partnership in
the amounts of approximately $28,000 and $41,000, respectively.  However, neither the Trust nor the
Partnership had made any actual distributions of money to Matthews as of the
date of trial. 

The trial court held a trial on the
merits only on the issue of the “phantom” income.  A court reporter recorded the parties’ arguments,
during which they referred to the Trust document, the Partnership Agreement,
and stipulated facts, including as to income actually received and assets that did
not produce income.[2]  No exhibits, however, were marked and handed
to the court reporter for receipt into evidence.

After hearing the arguments of
counsel, the trial court ordered the parties to provide further briefing on the
issue of Matthews’s income from the Partnership.  Matthew attached to his trial brief the
affidavit of Mother, who testified:

I have never declared a distribution, and I never will
as long as I am the General Partner.  A
distribution would be nothing more than contrary to my expressed intentions in
creating the KLM Family Partnership, Ltd. 
My son and daughter have never received any monies whatsoever from the
KLM Family Partnership Ltd. and I do not intend to declare a distribution of
any monies therefrom as long as I am alive.

 

In her trial brief, Northrup asserted
that a court has the power to order the trustee of a trust to make
disbursements for the support of a child to the extent that the trustee is
required to make payments to a beneficiary who is required to make child
support payments.  She noted that if
disbursements are discretionary, the court may order child support payments
from the income of the Trust.[3]  Northrup further asserted that the Trust
terminated by its terms when Matthews turned twenty-one years of age, which
triggered the clause that “all [T]rust property, including both income and
principal was to be distributed to him when he became twenty-one years of age.”

After the parties waived the making
of a reporter’s record for entry of a final order, the trial court entered its order,
in which it found that “the amount of net resources available to [Matthews] per
month from his employment is $4,433” and “the amount of net resources available
to [Matthews] from the [Trust] is an amount of at least $2,500.”  Accordingly, the court ordered Matthews to
pay child support in the amount of twenty percent of $6,933, equaling $1,386.66
per month.[4]

In his motion for new trial, Matthews
asserted that the trial court “erroneously assumed that because income taxes
were paid on [P]artnership income, that there was a distribution to [Matthews]
that complied with income received pursuant to the Family Code” and the
evidence is factually insufficient to support the child support award because
he has “never received a distribution from the family [P]artnership, and that
as far as he is aware, he never will.” 
The trial court denied the motion. 

Net Resources for Calculating Child Support

          In
his sole issue, Matthews argues that the trial court erred in including income
from the Trust in the net resources it used to calculate child support because,
under the Trust provisions, Mother is the lifetime beneficiary of the Trust and
Matthews “is not now and as long as his Mother is alive will not become a
beneficiary of the [T]rust.”  He also argues
that because “the erroneous inclusion of non-existent funds in the calculation
of child support caused the award of support . . . to depart substantially from
the guidelines,” the trial court abused its discretion in not “making the
findings required by Texas Family Code sections [154.130(a)(3) and
154.130(b)].”[5]  He further argues that if this Court
determines that the trial court made a mistake in identifying the entity from
which the “phantom” funds were allocated as the Trust instead of the
Partnership, the trial court abused its discretion in deeming “one hundred
percent value on the [P]artnership profits” because there is no evidence that
his Partnership interest has any value while his mother is alive. 

          The
purpose of child support is to help a custodial parent maintain an adequate
standard of living for a child. Farish v.
Farish, 982 S.W.2d 623, 627 (Tex. App.—Houston [1st Dist.] 1998, no
pet.).  Generally, a complaining party
must show that a trial court’s support order constitutes a clear abuse of
discretion in order for it to be disturbed on appeal.  Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); Newberry v. Bohn-Newberry, 146 S.W.3d 233, 235 (Tex. App.—Houston
[14th Dist.] 2004, no pet.).  A trial
court abuses its discretion when it acts without reference to any guiding rules
and principles.  Worford, 801 S.W.2d at 109; Holley
v. Holley, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ
denied).  In the child-support context,
sufficiency challenges are not independent points of error, but are
“incorporated into an abuse of discretion determination.”  McGuire
v. McGuire, 4 S.W.3d 382, 387 n.2 (Tex. App.—Houston [1st Dist.] 1999, no
pet.); see Burney v. Burney, 225
S.W.3d 208, 214 (Tex. App.—El Paso 2006, no pet.).  Our analysis employs a two-pronged inquiry:
(1) did the trial court have sufficient information upon which to exercise its
discretion; and (2) did the trial court err in its application of discretion.  McGuire,
4 S.W.3d at 387 n.2.  A trial court does
not abuse its discretion when there is some evidence of a substantive and
probative character to support the trial court’s order.  Newberry,
146 S.W.3d at 235. 

In determining the amount of child
support, the trial court must first determine the parties’ gross income, net
income, and monthly net resources.  Tex. Fam. Code Ann. § 154.062 (Vernon
Supp. 2009).  Each party must furnish
information sufficient to identify the party’s net resources and ability to pay
support, such as production of copies of income tax returns, financial
statements, and pay stubs.  Id. § 154.063 (Vernon 2008).  After determining the amount of net
resources, the trial court must decide whether to apply the child support
guidelines or whether application of the guidelines would be unjust or
inappropriate.  Id. § 154.122(b) (Vernon 2008). 
Importantly, a parent’s child support obligation is not limited to that
parent’s ability to pay from current earnings; rather it extends to his or her
financial ability to pay from any and all available sources.  McLane
v. McLane, 263 S.W.3d 358 (Tex. App.—Houston [1st Dist.] 2008, pet.
denied). 

In determining net resources, income
includes “all wage and salary income and other compensation for personal
services” and “all other income actually being received . . . including gifts
and prizes.”  Tex. Fam. Code Ann. § 154.062.  Additionally, a court may, when appropriate,
“assign a reasonable amount of deemed income attributable to assets that do not
currently produce income.”  Id. § 154.067(a) (Vernon 2008).  In doing so, the court shall also consider
whether such assets “can be liquidated without an unreasonable financial
sacrifice” and “if there is no effective market for the property, the carrying
costs . . . including property taxes and note payments, shall be offset against
the income.”  Id.  

The issue presented is whether the
gift of an interest in the Partnership, which had not and will not distribute
any profits to its partners, including Matthews, until after the death of the general
partner or the year 2052, is an “asset that [does] not currently produce income
such that the trial court could “assign a reasonable amount of deemed income”
to the asset.  The trial court apparently
found that Matthews had deemed income of $2,500 per month based on the
stipulations of income from his federal income tax returns.  In its Final Order, the trial court indicated
that this deemed income came from the Trust. 


Matthews argues that the trial court
erred in including this deemed income from the Trust in its child support
calculation because he cannot be a beneficiary of the Trust until after
Mother’s death.  However, it appears that
the trial court merely mislabeled the source of the deemed income.  The Trust provides that the beneficiaries of
the Trust include “not only the beneficiaries of the General Partnership
Interest but all of the Limited Partners of the [Partnership].”  Thus, Matthews, as a limited partner in the
Partnership, was indeed a beneficiary of the Trust.  The Trust does provide that upon Mother’s
disability “[Mother’s] Trustee shall distribute all income to [her] at least
annually” and “[her] Trustee may distribute principal as necessary for [her] health,
education, maintenance, and support.”  And,
if the Partnership still exists at Mother’s death, “[a]ll distributions of
income [and principal] are to be distributed at least annually among the
beneficiaries of the [Partnership], pro rata, according to their respective
interest.”  Also, if the Partnership is
dissolved and the Trust terminates while Mother is still alive, “the [T]rust
property shall be distributed to [Mother].” 
Moreover, if the Trust is terminated early due to the high cost of
administration, the “[T]rust property, including any accrued but undistributed
income” is distributed “to [Mother, if she is] then living.”  These Trust provisions, when read together,
implicitly identify Mother as the sole beneficiary of the Trust during her
lifetime, with the partners in the Partnership, if still in existence, as
beneficiaries after her death.  Accordingly,
Matthews is correct that he is not a beneficiary of the Trust while Mother is
alive.  He is only a remainder
beneficiary by virtue of being a limited partner in the Partnership.

Northrup asserted to the trial court
that the Trust terminated by its terms when Matthews turned twenty-one years of
age.  She argued, thus, that the Trustee
was required to distribute all Trust property to the beneficiaries, making
Matthews’s interest in the Trust currently accessible to him and available
income for the calculation of child support. 
However, the Trust was only required to distribute Trust property to
Matthews when he reached the age of twenty-one “if any [T]rust property [had
become] distributable to a beneficiary when the beneficiary [was] under 21
years of age.”  Here, no Trust property
had become distributable to Matthews while he was under twenty-one years of age
because Mother, the sole life beneficiary of the Trust, was still alive when he
reached twenty-one years.  Only if Mother
had died while Matthews was a minor would Trust property have become
distributable to him.  

Nevertheless, although there is no
evidence in the record of the value of Matthews’s interest in the Trust, there
is evidence of the value of his interest in the Partnership.  Accordingly, the proper source of the deemed
income identified by the trial court was the Partnership, and the trial court
made a non-substantive error in identifying the source of the income as the
Trust.   Matthews’s limited partner
interest in the Partnership is an asset. 
Under the UTMA, Mother had gifted to Matthews the limited partner
interest in the Partnership while he was a minor, naming herself as
custodian.  See Tex. Prop. Code Ann.
§ 141.004 (Vernon Supp. 2009).  When
Matthews reached twenty-one years of age, Mother, as custodian of the gift,
transferred ownership of the Partnership interest to him.  See Id.
§ 141.021 (Vernon 2007).  It is true that
the Partnership had not distributed any profits to the partners as of the date
of trial and, according to the affidavit testimony of Mother, it would not
distribute any profits until at least the year 2052 or upon her death.  However, Matthews’s Partnership interest has
value.  

The Partnership Agreement provides
that “[a]llocations to the Partner of Partnership income and gain” increase a
partner’s capital account.  Upon dissolution
of the Partnership, distribution of the reserves and property of the
Partnership are to be made to partners according to the percentage of their Partnership
interest, after payment of expenses of the general partner and creditors.  Therefore, the allocations of income to
Matthews’s Partnership interest beginning in 2005 increased the value in his
capital account.  According to the
Partnership Agreement, revocation of the Trust, which would dissolve the
general partner, could be an event that triggers termination of the Partnership
and a distribution of all Trust assets to Mother, if then living.  This would not, however, eliminate the value
of Matthews’s interest in the Partnership because the Trust’s assets do not
include this interest or any Partnership property, but only the general partner
Partnership interest.  If the Partnership
dissolves, Matthews will receive the value of his capital account and his share
of Partnership property, if any.  In a
sense, Matthews’s Partnership interest is like a retirement account which has
value but that value is not accessible to the recipient until retirement.  Matthews owns the Partnership interest, and
that interest has value, but it is not accessible to Matthews until the
Partnership dissolves, at the earliest of when Mother passes or the year 2052,
provided the partners do not agree to continue the Partnership upon either of
these events triggering dissolution.

“Once it is established that an
obligor owns property he must entirely negate its value in order to preclude
the court from considering it for purposes of his support obligation.”  Anderson
v. Anderson, 767 S.W.2d 163, 165 (Tex. App.—Houston [14th Dist.] 1988, no
writ).  Matthews did not negate the value
of his Partnership interest; he merely asserts that it has no value because he
has no current income from the Partnership. 
The fact that the Partnership has not made distributions of profits to
the partners does not mean that the Partnership interest is not an asset of
Matthews.  Rather, it is an asset that
does not currently produce income.  Accordingly,
we hold that the trial court acted within its discretion in assigning a
reasonable amount of deemed income to Matthews’s Partnership interest.  

Matthews asserts that the trial court
unreasonably deemed “one hundred percent [of the] value on the [P]artnership
profits and included those in the Net Resources of Appellant.”  The stipulations entered below show that
Matthews had approximately $28,000 of allocated income from the Partnership in
2005 and $41,000 in 2006.  Thus, the
trial court did not deem “one hundred percent” of the yearly allocated income
from the Partnership.  Rather, it
selected an amount closer to the 2005 amount—$30,000, or $2,500 per month.  The trial court, as required by Family Code
section 154.067(a), considered whether the Partnership interest could be
“liquidated without an unreasonable financial sacrifice” in determining the
reasonable amount of deemed income from the Partnership.  Accordingly, we hold that the trial court did
not err in calculating the amount of child support.

          We
overrule Matthews’s sole issue.

 

Conclusion

          We
modify the trial court’s judgment as to its finding number three under the
section entitled “Statement on Guidelines” to read “Further, the amount of net
resources available to MATTHEW AUSTIN MATTHEWS per month from the KLM Family
Partnership, Ltd. is an amount of at least $2,500” and, as modified, affirm the
judgment of the trial court.

          

          

                                                                   Terry
Jennings

                                                                   Justice

 

Panel consists of Justices Jennings,
Higley, and Sharp.











[1]           See
Tex. Prop. Code Ann. § 141.004
(Vernon Supp. 2009).





[2]           See
Tex. Fam. Code Ann. § 154.062 (Vernon
Supp. 2009), § 154.067 (Vernon 2008) (stating that trial court must consider
“income actually being received” and “may assign a reasonable amount of deemed
income attributable to assets that do not currently produce income” in
calculating obligor’s net resources).

 





[3]           See
Tex. Fam. Code Ann. § 154.005 (Vernon 2008).

 





[4]           See
Tex. Fam. Code Ann. § 154.125
(Vernon Supp. 2009) (for one child, trial court shall presumptively set child
support at twenty percent of obligor’s net monthly resources, if net monthly
resources do not exceed $7,500).





[5]           See
Tex. Fam. Code Ann. §
154.130(a)(3) (Vernon Supp. 2009) (“. . . in rendering an order of child
support, the court shall make the findings required by Subsection (b) if . . .
the amount of child support ordered by the court varies from the amount
computed by applying the percentage guidelines.”).